IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY KEATING, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff Jeffrey Keating ("***Keating***"), by and through his undersigned counsel, files this Complaint against Hartford Life and Accident Insurance Company ("***Hartford***") and states as follows:

**NATURE OF ACTION**

1. This is a claim to recover benefits due under an insured employee welfare benefit plan. Long-term disability ("LTD") benefits are alleged due under the H.W. Lochner, Inc. Life Insurance Policy (the "Policy"), policy number GLT874380. A true and accurate copy of the Policy in effect at all times relevant is attached hereto as **Exhibit A**. The Policy is and was underwritten by Hartford and administered by H.W. Lochner, Inc. ("Lochner"), to provide LTD insurance benefits to employees of Lochner in the event an employee suffers a disability as defined in the Policy due to sickness or injury. This action is brought pursuant to ERISA § 502(a)(1)(B) (28 U.S.C. § 1132(a)(1)(B)). Keating also seeks penalties and attorney fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g).

**JURISDICTION AND VENUE**

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, and, in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan such as the group LTD insurance coverage underwritten by Hartford in this action.

3. Additionally, this Court has jurisdiction of this case pursuant to 29 U.S.C. 1331, as this action arises under the laws of the United States.

4. Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

**PARTIES**

5. Keating is an individual residing in Lisle, Illinois. Keating is a former employee of Lochner covered by the Policy during the relevant time period.

6. Hartford is a Connecticut stock insurance company with its principal place of business at 200 Hopmeadow St., Simsbury, Connecticut 06089. At all times relevant, Hartford was doing business throughout the United States and within the Northern District of Illinois.

**FACTS**

7. At all times relevant to this action, the Policy constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

8. As part of his benefits in his position with Lochner, Keating received coverage under the Policy as a "participant" as defined by 29 U.S.C. § 1002(7). Keating's claim relates to benefits under the Policy.

9. Keating was successfully employed as a full-time Rail Design department head and project manager of rail service with Lochner until he was diagnosed with an acoustic

neuroma or vestibular schwannoma in late 2016. On January 24, 2017 he underwent neurosurgery at Hinsdale Hospital to remove this benign tumor. Dr. Robert Kazan resected a right vestibular schwannoma with right transluminal labyrinthine craniotomy.

10. Keating developed an altered mental status during his post-surgical hospital stay. A head MRI was performed on January 26, 2017 which revealed a new onset ischemic infarct (a stroke) in the posterial later pons, causing persistent blurry vision, word-finding difficulty and spatial disorientation. Due to his surgery and his stroke, Keating remained at Hinsdale Hospital until January 31, 2017.

11. Following his January 31, 2017 discharge, Keating underwent first acute inpatient rehabilitation for his post-surgical care at Marianjoy Rehabilitation. He was discharged February 10, 2017 with residual facial weakness due to the schwannoma, diplopia, eye pain and persistent dizziness.

12. Keating continued his outpatient care and followed his physician's recommendations until he was cleared to work part-time, three days a week, four hours per day with one day off in between, beginning July 31, 2017.

*Keating's Receipt of LTD Benefits*

13. In light of his medical condition, Keating applied for and received LTD benefits from Hartford pursuant to the terms of the Policy, which contained the following definitions:

> **Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period; and
> 2) Your Occupation following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings.
>
> **Essential Duty** means a duty that:
> 1) Is substantial, not incidental;
> 2) Is fundamental or inherent to the occupation; and
> 3) Cannot be reasonably omitted or changed.

3

> Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty.
>
> **Your Occupation** means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location.

14. Keating was determined to be Disabled from performing his Occupation on January 24, 2017 (the date of his neurosurgery) due to a stroke and visuospatial deficits. His LTD benefits first became payable on April 24, 2017 upon completion of the benefit elimination period.

15. Following post-surgical care and outpatient rehabilitation, Keating returned to work part-time in early August 2017 and experienced extreme fatigue after a workday, sleeping 3-4 hours upon returning home followed by a full night's sleep. Keating reported no worsening of dizziness or lightheadedness but continued to suffer debilitating fatigue on his part-time schedule.

16. Through December 2017, Keating continued to report extreme fatigue following his part-time schedule to his medical team, including Physician's Assistant Sylvia Duraski with Marianjoy Rehabilitation. Ms. Duraski noted on December 18, 2017 that Keating needed a work schedule of three days a week for four hours a day, as his attempt at working more hours was not tolerated.

17. On January 19, 2018, Duraski issued a letter stating Keating had been cleared to work between 20-40 hours per week *as tolerated*.

18. In February 2018, Keating's neuro-optometrist, Dr. Carrie Sypherd, gave Keating a Visual Functional Exam which noted Keating had visual limitations such as vertical strabismus with corresponding impairment in reaching and moving, limits on reading 12-point font print for

4

only 15 minutes at a time for up to two hours per workday due to fatigue. Keating was unable to perform tasks requiring fine detail due to quickly fatiguing.

19. In March 2018, Keating reported to Duraski that he was suffering from extreme fatigue after work, problems with his memory, including occasionally forgetting to complete tasks, problems holding fluids in his mouth, and short temper well out of proportion to the situation at hand. Duraski recommended seeing a psychiatrist for potential relief from fatigue and the emotional outbursts and recommended following up with Dr. Sypherd for difficulty with his vision. Duraski also recommended that Keating *attempt* to work *up to* 40 hours per week.

***Hartford Terminates Keating's LTD Benefits Without Medical Support***

20. Throughout this period, Keating had continued to receive LTD benefits from Hartford. However, on May 10, 2018, Hartford terminated Keating's benefits retroactive to January 19, 2018 and asserted a claim for overpayment of benefits for the interim period.

21. In a denial letter dated May 10, 2018 (the "***First Denial Letter***"), Hartford asserted that Keating was no longer Disabled from his Occupation under the Policy as he did not have "physical or ophthalmology restrictions beginning 1/19/2018" and alleged Keating was "capable of performing full-time work, eight hours per day and forty hours per week beginning 1/19/2018." A true and correct copy of the First Denial Letter is attached hereto as **Exhibit B**.

22. In support of the First Denial Letter, Hartford relied upon two Independent Medical Reviews by Dr. Renat Sukhov and Dr. Sami Kamjoo, both of whom purportedly reached the conclusion that Keating was capable of full-time work at forty hours per week without restrictions. These evaluations were based on review of medical records and one purported phone conversation with Duraski, not on examinations of, or interviews with, Keating.

23. Neither Dr. Sukhov's nor Dr. Kamjoo's evaluations or reports were provided to Keating, despite his request for his full claim file.

24. Hartford's First Denial Letter contradicted the opinions of Keating's treating physicians, none of whom had ever opined that Keating was physically capable of working full-time, forty hours per week, an Essential Duty of his Occupation as defined by the Policy.

*Keating's Appeal to Hartford*

25. On November 6, 2018, Keating formally appealed Hartford's denial of benefits, submitting additional medical records and opinions establishing that Hartford's determination disregarded documented clinical evidence corroborating Keating's ongoing entitlement to LTD benefits under the Policy.

26. Keating's additional evidence included additional medical records and information after January 19, 2018 which illustrated his continuing debilitating fatigue even on a part-time work schedule. On the advice of Duraski, Keating treated with a psychiatrist beginning June 2018 to rule out a psychological reason for his fatigue and began taking Lexapro to combat fatigue. However, his fatigue continued unabated and continues to date.

27. In August 2018, Keating had been advised by Duraski to return to his general practitioner, Dr. Winiecki, once more to rule out medical reasons for his fatigue, including potential sleep apnea or hypothyroidism. Previously, Dr. Winiecki had not found a physiological reason for Keating's fatigue other than his stroke.

28. As neither the rehabilitation physicians, Keating's general practitioner, nor Keating's psychiatrist had located a physiological or psychological reason for his debilitating fatigue aside from his stroke, Dr. Battista also suggested Keating follow up with a neurologist with specialization in stroke treatment to rule out any potential medical cause related to the stroke that had been previously missed.

29. Keating also submitted medical notes from his treating physicians Dr. Sypherd and Dr. Battista from October 2018, in which both doctors stated that Keating was able only to

work around 16 hours per week or "limited hours" due to his fatigue from his stroke and vision deficits.

30. Keating submitted statements from himself and his wife detailing how his fatigue and vision problems, as well as depression and cognitive issues such as forgetting simple tasks, impacted his daily life. He submitted ample evidence that he is unable to perform full-time work and is therefore Disabled pursuant to the Policy.

***Hartford's Second Denial of Benefits***

31. On January 3, 2019, Hartford notified Keating that it was upholding its decision to terminate his LTD benefits (the "***Second Denial Letter***"). The Second Denial Letter was untimely outside the 45-day response period required by 29 C.F.R. § 2560.503-1(i)(3)(i). The 45-day period expired no later than December 24, 2018.[1] A true and correct copy of the Second Denial Letter is attached hereto as **Exhibit C**.

32. In support of the Second Denial Letter, Hartford relied upon the independent medical records review completed by Dr. Morris Osowsky and Dr. Rajesh Ethiraj, as well as an Occupational Analysis of Keating's occupation.

33. Neither Dr. Osowsky nor Dr. Ethiraj examined or interviewed Keating, but merely spoke to some of his medical providers on the phone. Dr. Ethiraj spoke with Duraski and incorrectly determined that Keating had not complained of fatigue or balance issues until the "August appointment" despite ample medical record evidence to the contrary.

34. The opinions of Hartford's "Independent Medical Review" physicians were made without the benefit of an interview with or a firsthand examination of Keating. Their opinions

---

[1] Hartford stated it was denying Keating's appeal letter of November 9, 2018. While Keating has proof of receipt of delivery of the appeal letter to Hartford no later than November 7, 2018, the two-day difference is immaterial. Using Hartford's acknowledged date of November 9, 2018 yields a 45-day period expiring December 24, 2018, rendering the January 3, 2019 Second Denial Letter untimely.

contradicted the records of Keating's treating physicians, none of whom opined he was able to physically work full-time, forty hours per week.

35. Keating has not been provided the reports of either Dr. Osowsky or Dr. Ethiraj, nor the Occupational Analysis reportedly performed by the Hartford's Rehabilitation Case Manager, despite sending a formal request for his entire claim file and the records reviewed in reaching the determination to terminate his benefits on April 2, 2019.

36. On August 7, 2019, Dr. Battista wrote another letter regarding Keating's health which states that he becomes fatigued very quickly and should work only twenty to twenty-five hours per week.

37. On October 24, 2019, Dr. Ning Sun of DuPage Neurological Associates wrote a letter indicating that Keating should not work more than twenty-four hours per week due to his neurological conditions.

38. As of the date of this filing, Hartford has not responded to Keating's April 2, 2019, request for his entire claim file, including the reports of Drs. Osowsky, Ethiraj, Sukhov, and Kamjoo, and the Occupational Analysis.

39. Hartford's denial of benefits was based on improper reasoning and was arbitrary and capricious since the evidence supported Keating's ongoing Disability under the Policy's terms.

40. Federal regulations regarding a claim for disability benefits require that the plan administrator shall notify the claimant of the plan's adverse benefit determination within a reasonable period of time, but not later than forty five (45) days after receipt of the claim by the plan. This period may be extended by the plan for up to thirty (30) days, provided that the plan administrator both determines that such an extension is necessary due to matters beyond the control of the plan and notifies the claimant, prior to the expiration of the initial 45–day period,

of the circumstances requiring the extension of time and the date by which the plan expects to render a decision. 29 C.F.R. § 2560.503-1

41. Here, Hartford also failed to comply with the forty-five (45) day deadline to produce Keating's claim file as required.

### RELIEF REQUESTED

*Wherefore*, Keating requests that the Court enter judgment in his favor and against Hartford, granting the following relief:

A. Entry of an order that Hartford pay long-term disability benefits to Keating in an amount equal to the contractual amount of benefits to which he is entitled or, in the alternative, remand for a proper evaluation of Keating's application;

B. Entry of an order that Hartford pay Keating prejudgment interest on all benefits that have accrued prior to the date of judgment;

C. Entry of an order that Hartford continue paying Keating benefits so long as he continues to meet the policy conditions for continuance of benefits;

D. Award Keating his attorneys' fees pursuant to 29 U.S.C. § 1132(g) and costs of suit; and

E. Such other and further relief the Court deems just and appropriate.

Date: September 21, 2020

*Jeffrey Keating*

By: /s/ Matthew B. Schiff
One of His Attorneys
Matthew B. Schiff (ARDC No. 6183017)
Kathryn C. Nadro (ARDC No. 6306141)
Joelle M. Shabat (ARDC No. 6313951)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: (312) 704-9400
mschiff@sfgh.com
knadro@sfgh.com
jshabat@sfgh.com